UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
ARIELLE WALSH, on              )
behalf of herself and all others )
similarly situated,            )
                               )
          Plaintiffs,          )
                               )
     v.                        )      C.A. No. 15-472-WES
                               )
GILBERT ENTERPRISES, INC.,     )
d/b/a CLUB FANTASIES, and      )
FRANCIS DELUCA,                )
                               )
          Defendants.          )
_____)
```

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion for Rule 23 Class Certification (ECF No. 52) and Plaintiff's Renewed Motion for Notice to be Issued to Similarly Situated Individuals Pursuant to 29 U.S.C. § 216(b) (ECF No. 53).  Defendants have objected to both motions (ECF No. 56). For the reasons stated, Plaintiff's motions are granted.

I.  Background

This is one of four cases brought on behalf of "exotic dancers" at various Rhode Island night clubs since 2015.  See also Levi v. Gulliver's Tavern, Inc., C.A. No. 15-216 ("Levi"); Binienda v. Atwells Realty Corp., C.A. No. 15-253 ("Binienda"); Pizzarelli v. The Cadillac Lounge, L.L.C., C.A. No. 15-254 ("Pizzarelli").  The cases involve substantially similar allegations and identical

causes of action, namely, the allegation that women who worked as dancers at these clubs were misclassified as independent contractors instead of employees.  Compare Levi Am. Compl., ECF No. 13 in C.A. No. 15-216, and Binienda Am. Compl., ECF No. 10 in C.A. No. 15-253, and Pizzarelli Compl., ECF No. 1 in C.A. No. 15-254 with Walsh Compl., ECF No. 1 in C.A. No. 15-472.  On April 13, 2018, the Court issued a lengthy memorandum explaining its reasoning for granting the plaintiff's motions for class certification and summary judgment in Pizzarelli v. Cadillac Lounge, L.L.C..  See Mem., ECF No. 47 in C.A. No. 15-254-WES ("Pizzarelli Memorandum").  Likewise, on April 23, 2018, the Court issued a similar memorandum addressing similar issues in Levi v. Gulliver's Tavern.  See Mem., ECF no. 59 in C.A. No. 15-216-WES ("Levi Memorandum").  Because this case is similar to Pizzarelli and Levi in its facts, the parties' arguments, and the Court's findings, this Memorandum incorporates the reasoning set forth in the Levi and Pizzarelli Memoranda and highlights only slight differences to the extent they are relevant to the present motions.

Arielle Walsh ("Walsh" or "Plaintiff") is a former dancer at Club Fantasies (the "Club") in Providence. See Pl.'s Mem. in Supp. of Mot. for Rule 23 Certification ("Pl.'s Mem.") 1, 4, ECF No. 52-1.  As a dancer, Plaintiff provided "erotic entertainment" to customers. Id. at 4.  According to Plaintiff, she was a part of the Defendant's usual business operations and subject to

2

significant control from the Club. Id. at 7. For example, Plaintiff alleges that the Club controls the dancers' schedules by requiring them to work three shifts per week and to report their availability to management at least a week in advance for scheduling purposes. Id. If a dancer failed to follow her reported schedule, Defendant could fine, suspend, or terminate the dancer. Id. at 6-7. Plaintiff also alleges that the Club controlled how dancers worked during their shifts by requiring them to wear certain attire or makeup and posting various rules-of-conduct in the dressing rooms. Id. at 8. And Plaintiff alleges that the Club supervised her and other dancers by, among other things, employing "house moms" to manage the dancers and tell them when to perform. Id. at 6.

As compensation, Plaintiff alleges that dancers made money exclusively based on tips from customers; the Club paid no wages of any kind. Id. at 9. From those earned tips, dancers were required to pay a "shift fee" to the house, to "tip out" other staff members, to pay the DJ, and to pay fines for violating Club rules. Id.

The Club requires all dancers to audition and, if they are hired, to sign agreements classifying them as independent contractors. Id. at 5-6. Walsh signed her agreement in 2012 ("the 2012 Agreement"); however, starting in 2016, the dancers were required to sign a new agreement that included a mandatory

arbitration provision ("the 2016 Agreement"). Id. at 5, 13–14.
Plaintiff stopped working at the Club before the 2016 Agreement
was introduced. As such, some putative class members (but not
Plaintiff) may be subject to arbitration agreements. Id. at 13.

II.  Motion for Rule 23 Class Certification

Plaintiff moves for class certification pursuant to Rule 23
of the Federal Rules of Civil Procedure on her state law claims
only. She defines the class as: "[A]ll individuals who have worked
as exotic dancers at Club Fantasies at any time since November 6,
2012." Id. at 2. She argues that she meets the numerosity,
commonality, typicality, adequacy, predominance, and superiority
requirements of Rule 23 as follows.

a. Legal Standard

A class may be certified if the Plaintiff shows that the class
meets the Rule 23(a) and (b)(3) requirements:

(1)  numerosity: "the class is so numerous that joinder of all
     members is impracticable";

(2)  commonality: "there are questions of law or fact common to
     the class";

(3)  typicality: "the claims or defenses of the representative
     parties are typical of the claims or defenses of the class";

(4)  adequacy: "the representative parties will fairly and
     adequately protect the interests of the class";

4

(5)    predominance: "questions of law or fact common to class
       members predominate over any questions affecting only
       individual members"; and

(6)    superiority: "a class action is superior to other available
       methods for fairly and efficiently adjudicating the
       controversy."

Fed. R. Civ. P. 23(a), (b)(3).

"Rule 23 does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). A plaintiff wishing to certify a class under Rule 23 must produce evidence sufficient to show her compliance with the rule. See id. at 350-51. The Court must undertake a "rigorous analysis" of the Rule 23 requirements, which often involves "some overlap with the merits of the plaintiff's underlying claim." Id. (citations omitted).

b. Parties' Arguments

First, Walsh argues that more than fifty individuals work as dancers at the Club each month, suggesting to the Court that there could be hundreds of potential plaintiffs in the community.  Pl.'s Mem. at 11.  Second, Walsh contends that the question of whether dancers were misclassified as independent contractors is common to all class members.  Id. at 15.  She claims that the issue of the arbitration provision is not germane to the dancers' underlying claims and therefore should not be considered at the class certification stage. Id. at 13-14. Third, Walsh argues that she

5

adequately represents the interests of the class because she worked at the same club, was subject to the same policies and contractual terms as the proposed class and is seeking the same recovery for herself as she is for the proposed class. Id. at 15-16. Fourth, Walsh contends that the defining question in this case (of employment status) will turn on common evidence concerning the Club's practices, policies, and rights with respect to the dancers and, therefore, common issues predominate over individual issues. Id. at 17. Fifth and finally, Walsh argues that a class action is the superior means of litigating these claims because the class members' damages may be relatively small such that their ability and incentive to individually litigate their claims may not exist. Id. at 20.

Defendants argue that Plaintiff has not met the requirements of Rule 23 for the following reasons. First, they contend that Walsh has identified only five opt-in plaintiffs who have chosen to join the lawsuit and that this minimal engagement suggests that there is no interest from putative class members in participating in the case. See Def.'s Resp. to Pl.'s Mot. for Rule 23 Class Certification and Pl.'s Renewed Mot. for Notice to be Issued ("Def.'s Resp.") 17, ECF No. 56-1. As such, Defendants ask the Court to find an absence of numerosity. Second, Defendant claims that the differences between the 2012 Agreement and the 2016 Agreement prevent Walsh from proving that her claims are typical

6

of the class because, according to Defendants, class members who worked at the club after 2016 are contractually barred from participating in the action. Id. at 36. Third, Defendants contend that Walsh is an inadequate representative for the class because her claims are directly antagonistic to the claims of currently-employed dancers who benefit from being classified as independent contractors. Id. at 23-24. Fourth, Defendants claim that the "basic liability question — whether entertainers are employees or independent contractors — is not susceptible to common or representative proof" and, therefore, common questions do not predominate over individual questions. Id. at 28. For the same reason, Defendants argue that the class action mechanism is not the superior method of litigating these claims. Id. at 28, 30.

c. Discussion

i. Numerosity

Class size, while important, is not determinative of the numerosity requirement. See Andrews v. Bechtel Power Corp., 780 F.2d 124, 131 (1st Cir. 1985). Furthermore, numerosity is "'not a difficult burden to satisfy'" and courts routinely find that classes with more than forty members meet the requirement. McAdams v. Mass. Mut. Life Ins. Co., No.Civ.A. 99-30284-FHF, 2002 WL 1067449 at *3 (D. Mass. 2002) (quoting In re Cardizem CD Antitrust Litig., 200 F.R.D. 297, 303 (E.D. Mich. 2001)) (granting class certification for a class of 117 members dispersed across thirty-

three states); see also In re Modafinil Antitrust Litig., 837 F.3d 238, 250 (3d Cir.2016) ("Leading treatises have collected cases and recognized the general rule that [a] class of 20 or fewer is usually insufficiently numerous [and a] class of 41 or more is usually sufficiently numerous. . .")(quotations omitted).

Here, Defendants have not contested that more than fifty entertainers work at the Club each month, raising the inference that there could be several hundred potential plaintiffs in the community. See Dep. of Frank DeLuca 39-40, ECF No. 52-3. Accordingly, the Court is satisfied that Plaintiff has met Rule 23's numerosity requirement.

ii. Commonality

To satisfy the commonality requirement, Plaintiffs must show that the claims "depend upon a common contention . . . capable of classwide resolution," and that "class members have suffered the same injury." Dukes, 564 U.S. at 350, 352 (holding that 1.5 million employees did not meet the commonality requirement because their underlying "pattern or practice of discrimination" claim involved "literally millions of employment decisions.")(citations omitted).

Nothing in the record indicates that Defendants' right to control Plaintiff was any different from the Club's right to control other proposed class members, including those who are subject to mandatory arbitration provisions. Indeed, Defendants admit that they classified all entertainers as independent

contractors. See Def.'s Resp. 5.  Because the state law claims are

based on Defendants' classification of potential class members as

independent contractors, the claims surely satisfy the commonality

requirement. See DeGidio v. Crazy Horse Saloon & Rest., Inc., No.

4:13-CV-02136-BHH, 2017 WL 5624310, at *11 (D.S.C. Jan. 26, 2017),

aff'd and remanded, 880 F.3d 135 (4th Cir. 2018), ("Various courts

have found commonality where the record evidence established that

entertainers were subject to a uniform set of pay policies and

practices."). There are questions of law and fact common to the

class sufficient to satisfy Rule 23(a)(2).

        iii. Typicality

    The Supreme Court has stated that:

        [T]he commonality and typicality requirements
        of Rule 23(a) tend to merge.  Both serve as
        guideposts for determining whether under the
        particular circumstances maintenance of a
        class action is economical and whether the
        named plaintiff's claim and the class claims
        are so interrelated that the interests of the
        class members will be fairly and adequately
        protected in their absence.

Dukes, 564 U.S. at 349 n.5 (quoting Gen. Tel. Co. of SW v. Falcon,

457 U.S. 147, 157-58, n.13 (1982)).

    Plaintiff is typical of the class notwithstanding the fact

that she is not subject to a mandatory arbitration provision

because that provision from the 2016 Agreement does not alter the

claims among the class — i.e., whether dancers were misclassified

as independent contractors. Here, Plaintiff was subject to the

same general practices and policies at the Club and all class members were classified as independent contractors, regardless of whether they are required to arbitrate their claims.

    iv. Adequacy

"[T]he adequacy-of-representation requirement . . . raises concerns about the competency of class counsel and conflicts of interest" between the representative plaintiff and the putative class members. Id. "But perfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable. 'Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.'" Matamoros v. Starbucks Corp., 699 F.3d 129, 138 (1st Cir. 2012) (quoting 1 William B. Rubenstein, Newberg on Class Actions § 3:58 (5th ed. 2012)).

Although Defendant argues that Plaintiff will not protect the interests of the proposed class members by opposing enforcement of the arbitration clause, this is not the type of conflict of interest that would prevent Plaintiff from fairly and adequately protecting the interests of the class. See, e.g., Gen. Tel. Co. of NW, Inc. v. EEOC, 446 U.S. 318, 331 (1980) (explaining that a conflict of interest for Rule 23(a)(4) purposes would be, "for example, between employees and applicants who were denied

employment and who will, if granted relief, compete with employees for fringe benefits or seniority.").

Likewise, Plaintiff's counsel has experience with numerous class action cases based on similar claims, and there are no conflicts of interest apparent from the record. See Andrews, 780 F.2d at 130 (explaining that Rule 23(a)(4) requires that "counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation" (citation omitted)). Thus, the representative parties will fairly and adequately protect the interests of the class, satisfying the requirements of Rule 23(a)(4).

v. Predominance

The common law "right to control" test governs Plaintiff's state law claims. Thus, factual differences in class members' actual treatment at the Club are immaterial; the only significance for this test is the Club's ability to control the entertainers. This question is common to all class members and will predominate over any individual questions of actual treatment or control.

As discussed in relation to the Rule 23(a)(2) "commonality" requirement, Defendants' uniform classification of all class members as independent contractors makes it clear that common issues predominate. See In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 958 (9th Cir. 2009) (holding that "uniform corporate policies will often bear heavily on questions

11

of predominance" and that "centralized rules, to the extent they reflect the realities of the workplace, suggest a uniformity among employees that is susceptible to common proof").

　　　　　vi. Superiority

Class actions are superior to other dispute resolution methods when there would be significant cost savings to class members, and class resolution would be more efficient, thereby preserving judicial resources. See Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper, 445 U.S. 326, 338 n.9 (1980) ("A significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation, particularly attorney's fees, by allocating such costs among all members of the class who benefit from any recovery.").

Here, proceeding in a class action is superior to each proposed class member bringing their claims individually because it would consolidate attorneys' fees and the Court's case management resources. A class action may also incentivize class members to participate in the litigation when damages are relatively small.

　　　　　d. Conclusion

In sum, it would be inefficient for the parties and the Court to require each class member to bring an individual claim when a class action is available and appropriate. This Court reached the

same conclusion in Pizzarelli and Levi, just as numerous other courts have done in similar so-called exotic dancer misclassification cases. See Pizzarelli Mem. 30-31; see also DeGidio, 2017 WL 5624310, at *15 (citing cases).

The Court finds that Plaintiff has satisfied each requirement of Rule 23 and will therefore grant her Motion for Rule 23 Class Certification, ECF No. 52.

III. Renewed Motion for Notice to Be Issued to Similarly Situated Individuals Pursuant to 29 U.S.C. § 216(b).

Plaintiff moves for conditional certification of the collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). She defines the class as "all individuals who have worked as exotic dancers at Club Fantasies since October 3, 2013." Pl.'s Mem in Supp. of Mot. for Renewed Notice at 16, ECF No. 53-2 ("Pl.'s Notice Mem."). She has also submitted a proposed Notice to be issued to potential plaintiffs, which she contends "meets the timeliness, accuracy and informational requirements" established in Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989), because it adequately describes the lawsuit, informs recipients of their opportunity to opt-in, instructs them how to opt-in, and notifies them of the consequences of opting-in. Id. at 22. The Court addresses each aspect of her Motion in turn.

13

a. Conditional Certification

Plaintiff contends that she has already met the more rigorous numerosity, commonality, typicality, and adequacy requirements for class certification under Rule 23 and so she necessarily meets the less stringent requirement of establishing that class members are "similarly situated" to obtain conditional certification under the FLSA. See Pl.'s Notice Mem. 2-3. She also contends that courts routinely grant conditional certification and issue notice in FLSA actions brought by exotic dancers challenging their classification as independent contractors. Id. at 3.

Defendants claim that Plaintiff has not proved that she is "similarly situated" to other potential plaintiffs because "[m]ere identification of a shared job title or pay structure is not sufficient to warrant an exception to the longstanding principle that claims should be adjudicated on an individual basis." Def.'s Resp. 21. Defendants contend that the "economic reality" test governs whether potential plaintiffs constitute "employees" or "independent contractors" and that test cannot be applied on a class wide basis. Id. at 27. According to Defendants, whether the potential plaintiffs were properly classified as independent contractors varies from entertainer to entertainer because all entertainers experience varying levels of supervision and control, economic independence, permanency in their relationship to the Club, application of initiative and investment in their business,

14

and opportunities for profit and loss.  Id. at 29.  The mere fact
that the Club classifies all entertainers as "independent
contractors" is immaterial to determining whether or not
certification under the FLSA is appropriate; Plaintiff must also
prove her ability to generate common answers to the common question
about the putative class members' employment status.  Id. at 20.
Because Defendants contend she cannot do so, they argue that
certification is inappropriate.  Id. at 22, 28.

    Collective action certification under the FLSA does not
incorporate Rule 23's numerosity, commonality, typicality, and
adequacy criteria, but instead requires only that collective
action plaintiffs be "similarly situated."  Prescott v. Prudential
Ins. Co., 729 F. Supp. 2d 357, 364 (D. Me. 2010).  Usually, FLSA
certification proceeds in two stages:  The first stage occurs early
in the case, before substantial discovery; it determines whether
notice should be given to potential collective action members and
typically results in the conditional certification of the
collective action.  Id.  Plaintiffs can meet their first stage
burden "by simply alleging that the putative class members were
together the victims of a single decision, policy, or plan that
violated the law."  Reeves v. Alliant Techsystems, Inc., 77 F. Supp.
2d 242, 247 (D.R.I. 1999) (quotations omitted).  The second stage
occurs after discovery is complete; it allows the employer to move

to decertify the collective action and requires the court to "make a factual determination on the 'similarly situated' question." Id.

Here, the Court held in abeyance Plaintiff's original motion for conditional FLSA certification, see ECF No. 22, pending the completion of discovery with respect to the named Plaintiff and the current opt-in Plaintiffs. See Order, ECF No. 35.  As such, significant discovery has already occurred in this action with respect to the named Plaintiff and the five opt-in plaintiffs. However, no discovery has taken place with respect to the as-yet unidentified opt-in plaintiffs who may respond to a future Notice of this action.  Since the second stage requires the Court to assess the specific circumstances of each individual opt-in plaintiff, the Court cannot proceed to that stage until after Notice has been issued and all putative class members who wish to participate have opted-in.  Accordingly, the Court will grant conditional certification if Plaintiff has adequately alleged that "putative class members were together the victims of a single decision, policy, or plan that violated the law." Reeves, 77 F. Supp. 2d at 247.

Plaintiff alleges that putative class members are employees who were misclassified as independent contractors. Whether a worker qualifies as an employee under the FLSA is a matter of economic reality and the primary question is whether the individual is economically dependent on the business to which she renders

service or whether she is in business for herself. Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 301 (1985) ("The test of employment under the Act is one of 'economic reality.'"); McFeeley v. Jackson St. Entm't, L.L.C., 825 F.3d 235, 241 (4th Cir. 2016) ("The touchstone of the 'economic realities' test is whether the worker is 'economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself.'") (quoting Schultz v. Capital Int'l. Sec., Inc., 466 F.3d 298, 304 (4th Cir. 2006) (alteration in original)). In making this determination, courts consider the totality of the circumstances and give particular attention to five factors, none of which are dispositive:

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.

Lindsley v. Bellsouth Telecomms. Inc., No. C.A. 07-6569, 2009 WL 537159 at *1 (E.D. La. Feb. 27, 209), aff'd, 401 F. App'x 944 (5th Cir. 2010) (citing Hopkins v. Cornerstone America, 545 F.3d 338, 343 (5th Cir. 2008)).

In each of these categories, Defendants argue that factual questions (such as how many hours worked, whether entertainers worked exclusively for Club Fantasies, whether entertainers

advertise their services on social media, etc.) preclude class treatment because these facts determine each entertainer's level of economic dependence on the Club. See Def.'s Resp. 29. Even if this is true, Plaintiff has met her burden of alleging that all entertainers were subject to the same unlawful employment policy, which is all that is required at the first stage of conditional certification. See Prescott, 729 F. Supp. 2d at 364 ("[T]he plaintiff must make 'a modest factual showing' that she and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan.") (quoting Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 547 (6th Cir. 2006)). Accordingly, it is appropriate to conditionally certify the collective action under the FLSA.

    b. Notice

    Plaintiff asks that the proposed Notice be sent via First Class mail and email and that it be posted conspicuously on the Club's premises during the proposed 90-day notice period. Pl.'s Notice Mem. 22-23. Plaintiff contends that a 90-day notice period is particularly appropriate here because the Club "has not maintained complete records for all of its current and former workers, leading to delays in reaching every class member." Id. at 24. For any notice that is returned as "undeliverable," Plaintiff requests leave to obtain phone numbers from the Defendants so she

can contact potential plaintiffs, update their addresses, and resend the notices via First Class mail. Id. at 23.

Defendants primarily take issue with: (1) Plaintiff's request for telephone numbers; (2) her request to post the Notice on the Club's premises; and (3) her request for a ninety-day opt-in period. They argue that sending notice by phone call, text, or email are methods of communication susceptible to abuse and that the Court will be unable to control the contents or frequency of communication; instead, Defendants urge the Court to provide notice by newspaper publication only. See Def.'s Resp. 40-41. Defendants also contend that posting Notice on the Club's premises is likely to cause tension between currently-working dancers who agree with the lawsuit and those who do not. Id. at 41. They also argue that a posted Notice could impact the Club's business if customers viewed or heard about the Notice while partaking in the Club's entertainment. Id. Finally, Defendants contend that Plaintiff has not given an adequate reason for requiring a ninety-day opt-in period as opposed to a thirty-day opt-in period and that the latter is "more than sufficient." Id. at 42.

District courts may, in their discretion, facilitate notice to potential plaintiffs in an FLSA collective action, to implement the "opt-in" procedure. See Hoffmann-La Roche, Inc., 493 U.S. at 168-69. The Court finds that it is appropriate to do so here. Accordingly, Defendants should provide Plaintiff with the names

and addresses of all entertainers who have worked at the Club since October 3, 2013.  Notice shall be issued by First Class mail only, unless Plaintiff demonstrates to the Court that the contact information provided by Defendant is inadequate to reach potential plaintiffs.  In such circumstance, the Court may require Defendant to disclose the phone numbers to potential plaintiffs for the limited purpose of obtaining updated mailing addresses for those individuals. There shall be a sixty-day opt-in period.  A copy of the Court-approved Notice is attached hereto as Exhibit A.

IV.   Conclusion

For the reasons stated herein, Plaintiff's Motion for Rule 23 Class Certification (ECF No. 52) and Plaintiff's Renewed Motion for Notice to Be Issued to Similarly Situated Individuals Pursuant to 29 U.S.C. § 216(b) (ECF No. 53) are GRANTED.  Plaintiff's original motion for conditional FLSA certification (ECF No. 22) is hereby passed as moot.  Accordingly, the statute of limitations with respect to Plaintiff's FLSA claims – which was previously tolled while the Court held her original motion in abeyance – shall begin to run again as of the date of this Order.


IT IS SO ORDERED.

_WESmith_
_____

William E. Smith
Chief Judge
Date:  March 14, 2019


20

**EXHIBIT A**

**COURT-AUTHORIZED NOTICE OF YOUR RIGHT TO "OPT-IN" TO CLAIMS
BROUGHT UNDER THE FLSA AGAINST THE OWNER OF CLUB FANTASIES**

<u>Walsh v. Gilbert Enterprises, Inc. d/b/a Club Fantasies</u>
United States District Court, Rhode Island
Civil Action No. 1:15-cv-472-S-PAS

[*DATE*], 2019

Dear current or former dancer at Club Fantasies:

Enclosed is a consent form allowing you to "opt-in" to participate in a case that has been filed by a former dancer at Club Fantasies in Providence, Rhode Island, under federal wage law. The federal claims in this case have been brought on behalf of anyone who has worked as a dancer at Club Fantasies since October 3, 2013.

 The Court has conditionally allowed this case to be a Fair Labor Standards Act collective action and has authorized this Notice.  The Court has not, however, taken a position on the merits of either party's case.

If you worked as a dancer at Club Fantasies at any time since October 3, 2013, you are eligible to participate in this case. To participate and obtain any form of recovery that may be awarded under federal law, you must complete and return this consent form to the address below by **no later than [60 days after notice mailing], 2019.**

In this lawsuit, the plaintiff alleges that the Defendant, who owns and operates Club Fantasies, violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by misclassifying the dancers as independent contractors instead of as employees, and failed to pay them the federal minimum wage.

The Defendant denies any wrongdoing and contends that the dancers were and are properly classified as independent contractors and were not employees of Club Fantasies.

Although the Defendant disputes the merits of this case, it recognizes the dancers' right to pursue these claims in court. The Defendant has given its assurance that you will not be subject to retaliation of any kind by choosing to participate in this case, and you will not be fired or subject to discrimination in any manner if you choose to exercise your rights under the FLSA.

The case is in an early stage, and there has not been a decision by the court as to whether the plaintiff's position or the defendants' position is the correct one. There also has not been any settlement reached.

If you do not return the enclosed consent form by **[60 days after notice mailing], 2019,** you will not be considered part of the federal wage claims in this case and will be unable to receive a share of any settlement or judgment that the plaintiffs may obtain

under federal law. If you do participate in the case, you will be bound any ruling entered by the court or settlement reached by the parties and you will forfeit the right to sue Defendant as an individual for the same claims made in this case.

The plaintiff who initiated this case will work with us to make decisions regarding the progress of this litigation and we welcome your input as well into those decisions.  If you decide to join this case, you may elect to have Plaintiff's Counsel represent you or you may retain another attorney.

If you decide to join this case, you may also be asked to be a witness, provide deposition testimony, and produce documents and other information as part of the case, although not all individuals who submit a consent form will be required to do so.

**Again, to join this case, you must return the enclosed consent form to the address below no later than [60 days after notice mailing].** In the meantime, if you have any questions, do not hesitate to contact Plaintiff's counsel at the contact information below:

> Harold Lichten
> Shannon Liss-Riordan
> Olena Savytska
> LICHTEN & LISS-RIORDAN, P.C.
> 729 Boylston Street, Suite 2000
> Boston, MA 02116
> (617) 994-5800
> hlichten@llrlaw.com
> sliss@llrlaw.com
> osavytska@llrlaw.com
> www.llrlaw.com
> Ebony Green, egreen@llrlaw.com (administrator)

**Please do not contact the court.**

This Notice has been authorized by the United States District Court for the District of Rhode Island.

Yours truly,

Harold Lichten

Re: Club Fantasies Federal Lawsuit

## CONSENT TO JOIN COLLECTIVE ACTION
Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)

1.  I consent and agree to pursue my claims arising out of my performing at Club Fantasies in connection with the above-referenced lawsuit.

2.  I work/worked as an exotic dancer for Club Fantasies in Providence, Rhode Island, from on or about _____ , _____ (month, year) to on or about _____ , _____ (month, year).

3.  I understand that this lawsuit is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.  I hereby consent, agree, and "opt in" to become a plaintiff herein and to be bound by any judgment by the Court or resolutions of this action under the federal wage law.

4.  I hereby designate Harold Lichten, Shannon Liss-Riordan, and Olena Savytska of Lichten & Liss-Riordan, P.C., at 729 Boylston Street, Suite 2000, Boston, Massachusetts and John T. Longo of Citadel Consumer Litigation, P.C., 996 Smith Street, Providence, Rhode Island, to represent me for all purposes in this action.

5.  I also designate the named Plaintiff in this action, the collective action representative, as my agent to make decisions on my behalf concerning all aspects of the litigation.

Signature: _____

Date: _____

Name: _____

Address: _____

_____

Telephone: _____

E-Mail: _____

**Send your consent form to:**

LICHTEN & LISS-RIORDAN, P.C.
ATTN: Ebony Green
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801
www.llrlaw.com
egreen@llrlaw.com