## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

_____

ARIELLE WALSH, on behalf of herself ⟩
and all others similarly situated, ⟩
⟩
      Plaintiff, ⟩
⟩
v. ⟩
⟩
GILBERT ENTERPRISES, INC. ⟩
d/b/a CLUB FANTASIES, ⟩
⟩
⟩
      Defendant. ⟩
_____ ⟩

Civil Action No.
1:15-cv-00472-M-LDA

### PLAITNIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

**I.     INTRODUCTION**

Plaintiff Arielle Walsh, through counsel, hereby files her unopposed Motion for Preliminary Approval of Settlement Agreement and Memorandum of Law in Support Thereof. Following a full-day mediation and subsequent discussions facilitated by D. Charles Stohler, the Parties have reached a settlement of this matter. As discussed herein, the proposed settlement is fair and reasonable and warrants this Court's preliminary approval.

On November 6, 2015, Plaintiff Walsh filed a Class and Collective Action Complaint against Gilbert Enterprises, Inc. d/b/a Club Fantasies (hereinafter "Club Fantasies") and Francis DeLuca in the Federal Court for the District of Rhode Island, alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and the Rhode Island Payment of Wages Law, R.I. Gen. Laws § 28-14-1 *et seq,* by failing to pay Plaintiff Walsh and similarly situated exotic dancers wages, an overtime premium for hours worked in excess of 40 hours per

1

week, requiring payment of unlawful tip-outs, fees, fines, liquidated damages, pre- and post-judgment interest, and attorney's fees and costs.  Dkt. 1.  On April 7, 2016, the Court granted Defendants' request to dismiss Plaintiff's claims against Francis DeLuca (Dkt. 19) and Defendant Club Fantasies filed its Answer and Affirmative Defenses on April 26, 2016. (Dkt. 20.)

On May 9, 2016, Plaintiff filed a Motion for Conditional Certification and Notice Pursuant to 29 U.S.C. § 216(b). (Dkt. 22.) The Court held Plaintiff's Motion for Conditional Certification in abeyance pending the completion of discovery and briefing on dispositive motions.  (Dkt. 31). After Plaintiff filed a Motion for Reconsideration, the Court granted equitable tolling on would-be collective action members' claims and ordered that motions for class and conditional certification may be filed concurrently with any dispositive motions. (Dkt. 35). After discovery was completed, on March 13, 2018, Plaintiff filed a renewed motion for conditional certification for her FLSA claims as well as a motion for class certification of her Rule 23 claims under Rhode Island law. (Dkts. 52, 53). After a hearing, on March 14, 2019, the Court issued an order certifying a Rule 23 class of all dancers who worked at Club Fantasies since November 6, 2012 and an FLSA collective of all dancers who worked at Club Fantasies since October 3, 2013. FLSA notice issued on August 9, 2019. (See Dkt. 65).

Rule 23 class notice issued after Court approval on October 25, 2019, and the Court set a new summary judgment deadline for 30 days following the Parties' mediation, should the mediation prove unsuccessful. See Dkt. 78. On November 12, 2019, the Parties participated in a full-day mediation with Mr. Stohler. At the conclusion of the mediation session, the Parties agreed to a basic framework for the settlement. During the weeks that followed, with the mediator's assistance, the Parties worked to finalize the terms of the settlement, including the

gross settlement amount and the structure for its disbursement. The Parties came to a final agreement on December 11, 2019. (Dkt. 79). The terms of this agreement are memorialized in the Settlement Agreement, attached hereto as Exhibit 1. A copy of the Notice is attached as Exhibit A to the Settlement Agreement.

The Settlement includes a Gross Settlement Amount of $750,000.00. Settlement Agreement ¶ 13(n). Defendant shall pay the Gross Settlement Amount to Plaintiff's Counsel in two parts, with $550,000.00 due within five business days after the Effective Date and the remaining $200,000.00 due no later than December 15, 2020. Id. ¶ 23(a). Eligible Class Members shall receive their Settlement Awards in two payments. The first payment, representing 73.33% of the Gross Settlement Amount, to be paid within 10 business days after the Effective Date, and the second payment, representing 26.67% of the gross Settlement Amount, to be paid on or before December 30, 2020. Settlement Agreement ¶ 26(iii).

In exchange, the Settlement provides a release of any and all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Club Fantasies and the Releasees that were or could have been asserted in the Complaint based on the facts alleged therein, including, but not limited to, any claim under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., the Rhode Island Minimum Wage Act, R.I.G.L. § 28-12-1, et seq., the Rhode Island Payment of Wages Law, § 28-14-1, et seq., allegations that Club Fantasies failed to pay exotic dancers a base wage, failed to pay exotic dancers overtime compensation, required exotic dancers to pay unlawful tip-outs, fees and fines, claims for liquidated and other damages, attorney's fees, unpaid costs, restitution or other compensation or relief arising thereunder, and under state common law claims (including unjust enrichment or quantum meruit), from the beginning of time through the date of Final Approval. Settlement

3

Agreement ¶ 15.     The Settlement Agreement provides an excellent settlement for Settlement Class Members with respect to their claims for unpaid wages and unlawful tip-outs arising from Defendant's alleged improper wage and hour practices at issue in this case given the possibility that the Litigation, if not settled now, would result in no recovery for Settlement Class Members or a recovery that was much less favorable. See Declaration of Harold Lichten, attached hereto as Exhibit 2, ¶ 12.

Accordingly, Plaintiff respectfully requests that the Court issue an Order: 1) granting preliminary approval of the Settlement Agreement; 2) approving the Notice to the Settlement Class Members; and 3) approving the proposed schedule and procedure for the final approval of the Settlement Agreement. Plaintiff respectfully submits that this Motion should be granted because the proposed Settlement Agreement satisfies all of the criteria for approval and falls squarely within the range of reasonableness. Defendant consents to this Motion and all relief requested herein.

## I.     THE TERMS OF THE SETTLEMENT AGREEMENT

### A.     The Settlement Class Members

The Settlement Agreement provides that the Settlement Class Members include "all individuals who have worked as exotic dancers for Club Fantasies between November 6, 2012 and the date of Final Approval, including the Plaintiff and all Opt-in Plaintiffs." Settlement Agreement ¶ 13(x). Defendant has represented that there are approximately 300 members of the Settlement Class, and Plaintiff has relied on this number in reaching this Settlement. Each Settlement Class Member will be fully advised of this class action settlement with the Notice of Settlement that is attached to the Settlement Agreement as Exhibit A. Id., Ex. A.

4

**B.**     __Notice Of The Settlement To Settlement Class Members__

The Settlement Agreement provides what Plaintiff believes is the fairest and most practicable procedure for notifying Settlement Class Members of the terms of the Settlement and their respective rights and obligations – U.S. First Class Mail and, where available, email. Under the terms of the Agreement, within ten (10) business days after the Court's Preliminary Approval Order, Defendant to the extent available, will provide to Plaintiff's Counsel an electronic database containing the names, last known addresses, last known telephone numbers (if any), last known email addresses (if any), and as ordered by the Court after its consideration of the Unopposed Motion for Preliminary Approval, social security numbers (if any) or tax ID numbers (if any) of each Settlement Class Member, along with the dates that each Settlement Class Member worked as a dancer for Defendant between November 6, 2012 and the date of Preliminary Approval (if known).  Id. ¶ 18(c). Within ten (10) business days after the receiving the Settlement Class List, Plaintiff's Counsel will mail and email the Court-Approved Notice of Settlement and Claim Form to Class Members. Id. ¶ 18(d). In order to ensure the best notice practicable, Plaintiff's Counsel will make reasonable efforts to identify current mailing addresses using public and proprietary systems prior to mailing the Notice and Claim Form. Id. ¶ 18(c). Each Settlement Class Member will have sixty (60) days from the initial mailing of the Notice of Settlement to submit a claim form, request for exclusion (opt-out) or object to the Settlement. Id. ¶¶ 13(q), 19-20. Settlement Class Members may submit their Claim Forms via regular mail, electronic mail, or facsimile, and they may execute and submit their Claim Forms online through DocuSign or a comparable electronic signature service on a website that will be established by Plaintiff's Counsel. Id. ¶ 18(h). To be timely, all Claim Forms must be postmarked, emailed or otherwise received by the Notice Deadline. Id. ¶ 18(i). Plaintiff's

Counsel shall file the claim forms received from the Settlement Class Members, in redacted form, with the Court once the Notice Deadline has passed. Id. ¶ 18(j).

### C.  Calculation And Distribution Of The Gross Settlement Amount

Pursuant to the Agreement, Defendant will pay the Gross Settlement Amount in two installments. Agreement ¶ 23(a). Within five (5) business days after the Effective Date, Defendant shall electronically transfer Five Hundred and Fifty Thousand ($550,000.00) of the Gross Settlement Amount to an escrow account set up by Plaintiff's Counsel. Id. On or before December 15, 2020, Defendant shall transfer the remaining Two Hundred Thousand Dollars ($200,000.00) to an escrow account set up by Plaintiff's Counsel. Id. No portion of the Gross Settlement Amount shall revert to Defendant after the Effective Date. Id.

The Gross Settlement Amount includes amounts to cover: (i) Twenty Thousand Dollars ($20,000.00) for the Named Plaintiff for her efforts in bringing and prosecuting this matter ("Service Award"); (ii) the amount of the Fee Award to Plaintiff's Counsel, which is not to exceed one-third (1/3) of the Gross Settlement Amount, and (iii) the payment of the out-of-pocket costs incurred by Class Counsel, which currently are estimated to be $8,440.91. Id. ¶¶ 13(p), 24(a)-(b).

After subtracting these amounts from the Gross Settlement Amount, the balance of the funds ("Net Settlement Amount") shall be apportioned among all Eligible Class Members. Id. ¶ 26. All Eligible Class Members will receive a *pro rata* share of the Net Settlement Amount based on the total number of workweeks that the Eligible Class Member is alleged to have worked for Defendant between November 6, 2012 and the date of Preliminary Approval of the Settlement. Id. ¶ 26(i). Each Eligible Class Member shall receive one (1) settlement share for each week in which they allegedly worked for Defendant. The total number of settlement shares

for all Eligible Class Members will then be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar amount. Id. That figure will then be multiplied by each Eligible Class Member's number of settlement shares to determine the Eligible Class Member's Settlement Award. Id. ¶ 26(ii). Settlement Awards shall be paid to Eligible Class Members in two installments. Id. ¶ 26(iii). The first of these will be sent within 10 business days after the Effective Date and will represent 73.33% of the Eligible Class Member's Settlement Award. Id. The second installment will be sent on or before December 30, 2020, and will represent 26.67% of each Eligible Class member's Settlement Award. Id.

The Settlement Award payments shall be reported on an IRS Form 1099. Id. ¶ 27. Plaintiff's Counsel shall provide Defendant's Counsel with a report of all Settlement Awards, non-deliverables, opt-outs and objections at least ten (10) business days before the Settlement Awards to Eligible Class Members are mailed and a follow-up report one hundred eighty (180) days later specifying which Settlement Awards were cashed and those that were not. Id. ¶ 18(l).

All Settlement Award checks shall remain valid and negotiable for one hundred eighty (180) days from the date of their issuance. Id. ¶ 29. On the 90th day after the date of their issuance, Plaintiff's Counsel will mail and email a reminder letter to Eligible Class Members who have not yet cashed their checks to inform and remind them of the 180-day deadline. Id. In addition, 60 days before the expiration of the 180 days, Plaintiff's Counsel will call Eligible Class Members who have not yet cashed their checks following the script to inform them of the 180-day deadline. Id. The proceeds of any remaining Settlement Award Checks that are not cashed after 180 days will be paid to the Parties' agreed-upon *cy pres* recipient, Rhode Island Legal Services, subject to the Court's approval. Id. ¶ 30. In such a circumstance, the Eligible Class Member shall nevertheless be deemed to have finally and forever released the Eligible

Class Members' Released Claims, except that the Eligible Class Member shall not release any FLSA claims against Defendant. Id. ¶ 29.

**D.      <u>Release Of Claims</u>**

In exchange for the Settlement benefits, Named Plaintiff, Opt-In Plaintiffs, and Settlement Class Members will release and discharge, Gilbert Enterprises, Inc. d/b/a Club Fantasies and all Releasees, finally, forever and with prejudice, from any and all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Gilbert Enterprises, Inc. d/b/a Club Fantasies and all Releasees that were or could have been asserted in the Complaint based on the facts alleged therein, including, but not limited to, any claim under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., the Rhode Island Minimum Wage Act, R.I.G.L. § 28-12-1, et seq., the Rhode Island Payment of Wages Law, § 28-14-1, et seq., allegations that Club Fantasies failed to pay exotic dancers a base wage, failed to pay exotic dancers overtime compensation, required exotic dancers to pay unlawful tip-outs, fees and fines, claims for liquidated and other damages, attorney's fees, unpaid costs, restitution or other compensation or relief arising thereunder, and under state common law claims (including unjust enrichment or quantum meruit), from the beginning of time through the date of Final Approval. Id. ¶ 15. However, only Named Plaintiff, Opt-In Plaintiffs, and Eligible Class Members who submit a Claim Form and are issued a settlement checks will release their FLSA claims. Id. ¶ 16. The Release covers Defendant and its present and former parent companies, subsidiaries, affiliates, divisions, and joint ventures, and all of its and their past and present shareholders, officers, directors, employees, agents, servants, owners, members, investors, executors, administrators, general partners, limited partners, real or alleged alter egos, predecessors, successors, transferees, assigns, registered representatives, attorneys, insurers,

partners, profit sharing, savings, health and other employee benefit plans of any nature, the successors of such plans and those plans' respective trustees, administrators, agents, employees, attorneys, fiduciaries, and other persons acting on its or their behalf, and each of them, and the predecessors and successors, assigns and legal representatives of all such entities and individuals. Id. ¶¶ 13(u), 15.

> ### E.      Attorneys' Fees And Costs

Pursuant to the Settlement Agreement, Plaintiff's Counsel's attorneys' fees shall not exceed one-third (1/3) of the Gross Settlement Amount, and will compensate Plaintiff's Counsel for all work performed in this lawsuit as well as all of the work remaining to be performed, including but not limited to securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the lawsuit. Id. ¶¶ 13(k), 23(b)(i). In addition, the Settlement Agreement provides that Plaintiff's Counsel shall receive reimbursement of their out-of-pocket costs approved by the Court, which are currently $8,440.91. Id. ¶¶ 13(p).

## II.      DISCUSSION

Plaintiff respectfully requests that the Court enter an Order preliminarily approving the Settlement. Defendant does not oppose this Motion.

> ### A.      The Legal Standard for Preliminary Review, Authorization of Class Notice, and Setting of Final Approval Hearing

It is well-established that "the law favors class action settlements." In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 88 (D. Mass. 2005) (citation omitted); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004) ("an overriding public interest in settling class action litigation, and it should therefore be encouraged").  Pursuant to Fed. R. Civ. P. 23(e), "[t]he claims, issues, or defenses of a certified class may be settled,

voluntarily dismissed, or compromised only with the court's approval."  The decision of whether to approve a proposed settlement is left to the discretion of this Court.  In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 32 (1st Cir. 2009).  Generally, "when sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996) (citation omitted); Rowland v. Cellucci, 191 F.R.D. 3, 6 (D. Mass. 2000) ("strong initial presumption" of fairness arises where the parties can show that "the settlement was reached after arms'-length negotiations, that the proponents' counsel have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small").  Furthermore, "[t]he preliminary approval decision is not a commitment to approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'"  Gates v. Rohm & Haas Co., 248 F.R.D. 434, 439 (E.D. Pa. 2008) (citations and quotation marks omitted).

Review of a proposed class settlement involves two steps: preliminary approval and a final "fairness hearing."  Manual for Complex Litigation (Fourth) § 13.14.  At the preliminary review stage, "the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval."  In re Puerto Rican Cabotage Antitrust Litig., 269 F.R.D. at 140. An initial presumption of fairness is established when the Court finds that "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of

the class objected." Id. (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995)).

Once it finds that a settlement meets the requirements of preliminary review, the Court authorizes notice of the proposed settlement and the fairness hearing to class members. At the final fairness hearing, class members may formally object to the proposed settlement. In re M3 Power Razor Sys. Mktg. & Sales Practice Litig., 270 F.R.D. 45, 62 (D. Mass. 2010).

### B.  The Proposed Settlement Satisfies the Requirements for Preliminary Review

Although Plaintiff believes that she has strong and meritorious claims, several concerns have led Plaintiff's Counsel to conclude that a settlement with Club Fantasies is preferable to a judgment on the merits. This case presented numerous and vigorously contested issues related to Plaintiff's and Settlement Class Members' classification under the Fair Labor Standards Act and Rhode Island Law, the existence of arbitration agreements signed by some of the Settlement Class members, and whether certain legal defenses provided Defendant with a complete or partial defense to liability. Lichten Decl. ¶ 25. Defendant contends, among other things, that the classification of the Settlement Class Members was consistent with Federal and Rhode Island law, and disputes the fact that Settlement Class members were subjected to unlawful deductions and tip-outs. Id. ¶ 26.

Based on these considerations, Plaintiff's Counsel strongly believe that the settlement negotiated here is fair, reasonable, adequate and most importantly, is in the best interest of the Settlement Class Members. Lichten Decl. ¶ 12. In reaching this conclusion, Plaintiff's Counsel have spent many hours preparing extensive briefing on Motions for Conditional and Class Certification, performing calculations and compiling spreadsheets leading up to a full-day mediation session. Id. ¶ 24. Plaintiff's Counsel believe that the total number of Settlement Class

Members entitled to a distribution is approximately 300.  Thus, the amount of the settlement ($750,000) is sufficient to pay shares to the Settlement Class Members who participate in the settlement.

An FLSA claim cannot be waived or settled, except in two circumstances. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 706 (1945). The exceptions are 1) that the Secretary of Labor can supervise the payment of back wages or 2) that the employer and employee present the proposed settlement to the district court for approval. 29 U.S.C. § 215(b); Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982).  Plaintiff requests that this Court approve the releases of FLSA claims in this case.  A district court, when reviewing a proposed settlement of an FLSA claim, should "scrutinize the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353-55 (11th Cir. 1982). The Lynn's Food Stores court essentially established four factors to guide the district court in determining whether to approve an FLSA Settlement:

1. Was the settlement achieved in an adversarial context?

2. Were the plaintiffs represented by attorneys who can protect their rights?

3. Does the settlement reflect a reasonable compromise over issues that are actually in dispute?

4. Is the settlement fair?

Id. at 1353-54.

This Motion, supported by the attached Settlement Agreement, reveals that the settlement was negotiated at arm's length, following highly contested litigation proceedings, by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and the amounts due to members of the putative class, assuming FLSA violations had occurred.  The

12

case presented numerous and vigorously contested issues related to the classification of the Settlement Class Members under the Fair Labor Standards Act of the Settlement Class Members and whether certain legal defenses provided Club Fantasies with a complete or partial defense to liability.  Furthermore, in Plaintiff's Counsel's extensive experience, the settlement is fair, just, and adequate to settle the claims of the Settlement Class Members.

       **C.**      **The Settlement Negotiations Occurred at Arm's Length**

The procedural background of this matter supports a finding that the Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and damages to Settlement Class Members.  The case has been going on since November 2015. Throughout its course, it presented numerous and vigorously contested issues related to the classification of the Settlement Class Members, the existence of arbitration agreements, and whether certain legal defenses provided Defendant with a complete or partial defense to liability. Lichten Decl. ¶¶ 24-25. The Parties completed extensive briefing on motions for conditional and class certification, and conducted extensive formal discovery, including lengthy written discovery and several depositions. Id. ¶ 24.The parties engaged in a full-day mediation with respected mediator Chuck Stohler, and continued to engage in settlement discussions with the assistance of the mediator, eventually arriving at the settlement discussed herein. Id. ¶ 11. The settlement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and damages.  Such arm's length negotiations between capable and experienced counsel is entitled to a presumption of fairness, reasonableness, and adequacy.  Rolland v. Cellucci, 191 F.R.D. 3, 6 (D. Mass 2000).

**D.**     <u>**Extensive and Sufficient Discovery Was Performed**</u>

At this stage, the Court is required to determine "whether sufficient evidence has been obtained through discovery to determine the adequacy of the settlement." <u>Rolland</u>, 191 F.R.D. at 10 (citation omitted).  Discovery is sufficient if it allows a court to "intelligently make . . . an appraisal of the Settlement." <u>In re Austrian & German Bank Holocaust Litig.</u>, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (quotation marks omitted).

Here, the Parties have conducted extensive discovery on the merits and on damages, including written discovery and several depositions, and performed extensive data analysis and damages calculations which allowed Plaintiff to establish a clear basis for assessing Settlement Class Members' schedule and to estimate their damages in this case. This is "sufficient" to determine the fairness and adequacy of settlement at this stage. <u>In re M3 Power Razor</u>, 270 F.R.D. 4563 (D. Mass. 2010) (finding discovery sufficient where defendant produced 100,000 documents and pertinent financial information).

**E.**     <u>**The Proponents of the Settlement Are Highly Experienced in Similar Litigation.**</u>

Plaintiff is represented by highly experienced and competent counsel who have litigated numerous wage and hour cases aggressively and successfully. Lead counsel, Attorney Harold Lichten, has litigated, tried, and settled numerous class action wage-and-hour cases around the country and is a recognized expert in labor and employment law, particularly in the area of independent contractor misclassification. Lichten Decl. ¶¶ 3-4.  Furthermore, Mr. Lichten's law firm, Lichten & Liss-Riordan, P.C., are pioneers in the field of worker misclassification and has litigated and settled numerous class action matters filed in the federal courts. <u>Id.</u> ¶ 2. Those settlements contained very similar terms to the proposed settlement in this case, including the

same provision for attorneys' fees and the same basic method for notifying class members and distributing the settlement proceeds.

Plaintiff's Counsel are thus well aware of the law in this area, and their experience has provided the Settlement Class Members with a high degree of expertise, which contributed to a favorable resolution of their claims.  Furthermore, Mr. Lichten's firm is also experienced in the mechanics of class settlement administration.  In the dozens of other cases the firm has settled as class actions around the country, there have been thousands of class members overall, requiring active engagement in processing claims from these settlements and distributing settlement proceeds.

In light of the arm's-length, hard fought negotiation in this case and Plaintiff's Counsel's prior experience and expertise in this area of law, the Court should find this proposed settlement to be fair, reasonable, and adequate and should issue preliminary approval.  See In re Puerto Rican Cabotage Antitrust Litig., 269 F.R.D. at 140 (settlement agreement need only "falls within the range of possible approval" to be preliminarily approved).

## F.       The Proposed Notice Satisfies the Requirements of Rule 23

Under Rule 23, the threshold for class notice is that "reasonably calculated to reach the class members and inform them of the existence of and opportunity to object to the settlement." Nilsen v. York County, 382 F. Supp. 2d 206, 2010 (D. Me. 2005) (citation omitted). "Rule 23 does not require the parties to exhaust every conceivable method of identifying the individual class members." In re Prudential Ins. Co. of Am. Sales Practices Litig., 177 F.R.D. 216, 232 (D.N.J. 1997) (citing Weinberger v. Kendrick, 698 F.2d 61, 71 (2d Cir.1982) (rejecting the contention that the mailing of individual notice to the last known address of all class members was inadequate), cert. denied, 464 U.S. 818 (1983).  Generally, all that is required is that the

class be issued the "best notice practicable under the circumstances." <u>In re Volkswagen & Audi Warranty Extension Litig.</u>, 273 F.R.D. 349, 355 (D. Mass. 2011).  Indeed, it is well-settled that notice by first-class mail satisfies the notice requirement of Rule 23.  <u>See Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 173–77 (1974); <u>Zimmer Paper Products, Inc. v. Berger & Montague, P.C.</u>, 758 F.2d 86, 90 (3d Cir. 1985); <u>Parks v. Portnoff Law Associates</u>, 243 F. Supp. 2d 244, 249-50 (E.D. Pa. 2003) (notices mailed to class members' last known address held reasonable and adequate).

The proposed notice form (attached as Exhibit A to the Settlement Agreement), satisfies the requirements of Rule 23. The Parties have drafted a Notice that clearly identifies basic information about the lawsuit and explains how Settlement Class Members can claim a share of the settlement or exercise their right to opt-out or object to the settlement.  It also lists the date, location, and time of the final fairness hearing and includes contact information for Plaintiff's Counsel. Thus the Notice meets the requirements of Rule 23.  <u>In re Compact Disc Minimum Advertised Price Antitrust Litig.</u>, 216 F.R.D. 197, 203 (D. Me. 2003) ("The notice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class."). Plaintiff's Counsel expects to be able to contact most of the class members through first-class mail, or email.  Thus, notice by mail and email will the "best available method under the circumstances."

### G.    The Proposed Incentive Payment is Justified and Should be Approved

The settlement also proposes an incentive payment of $20,000 for Plaintiff Arielle Walsh. The proposed incentive payment is fair and reasonable, given that the Plaintiff came forward to start this lawsuit, and it was through her initiative that this recovery was obtained. Plaintiff risked

16

her reputation in the community as well as her family finding out about her work in order to come forward with her claims. Lichten Decl. ¶ 28. Throughout the course of the litigation, Plaintiff provided invaluable assistance to Plaintiff's Counsel including providing documents, responding to discovery, and submitting to a deposition. Id.

Courts have widely recognized that incentive payments serve an important function in promoting enforcement of state and federal law by private individuals, while also encouraging class action settlements. See In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005); In re Compact Disc Minimum Advertised Price Antitrust Litig., 292 F. Supp. 2d 184, 189 (D. Me. 2003); see also Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002 WL 2003206, at *5-6 (E.D.N.Y. 20020 (collecting cases approving incentive payments). As Judge Hornby recognized, awards in employment cases were generally higher than in other types of cases and recent awards averaged around $15,000, but could reach $30,000 and higher. Scovil v. FedEx Ground Package Sys., Inc., 2014 WL 1057079m at *6 (D. Me. Mar. 14, 2014) (citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. Rev. 1303, 1308 (2006); Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir.1998) ($25,000 incentive award approved for one named plaintiff; total settlement was for $14 million plus structural changes to the pension fund)); see also Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, *8 (E.D.N.Y. Nov. 20, 2012) (approving service awards of $5,000 each to two plaintiffs, noting that "[s]uch service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs"); Toure v. Amerigroup Corp., 2012 WL 3240461, at * 5 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 and $5,000); Simmons v.

Enterprise Holdings, Inc., 2012 WL 2885919, *2 (E.D. Mo. July 13, 2012) (approving "payment of individual incentive awards to the named Plaintiffs in the amount of $6,000.00 as set forth in the Settlement Agreement for their services as class representatives and as consideration for providing a general release"); Sewell v. Bovis Lend Lease, Inc., 2012 WL 1320124, at * 14–15 (S.D.N.Y. Apr. 16, 2012) (finding reasonable and approving service awards of $15,000 and $10,000 in wage and hour action); Reyes v. Altamarea Group, LLC, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 to three class representatives and $5,000 to fourth class representative in restaurant case challenging tip and minimum wage policies); Willix v. Healthfirst, Inc., 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500); Torres v. Gristede's Operating Corp., 2010 WL 5507892, at *8 (S.D.N.Y. Dec. 21, 2010) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); Khait v. Whirlpool Corp., 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving service awards of $15,000 and $10,000, respectively, in wage and hour class action); In re Janney Montgomery Scott LLC Fin. Consultant Litig., 2009 WL 2137224, at *12 (E.D. Pa. July 16, 2009) (approving $20,000 payments to three named plaintiffs in complex FLSA)). Moreover, Judge Hornby approved $130,000 in incentive payments ranging from $10,000 to $20,000 for each of nine named plaintiffs who actively participated in the litigation. Id.

One of the reasons for awarding higher incentive payments in employment cases, including wage and hour cases, is the issue of retaliation. See, e.g., Overka v. Am. Airlines, Inc., 265 F.R.D. 14, 24 (D. Mass. 2010) (in certifying national class of skycaps challenging $2 per bag curbside check-in charges, court noted with approval skycaps' argument that "class adjudication is superior in the employment context because fear of employer retaliation may have a chilling

effect on employees bringing claims on an individual basis" and held that class action "is a superior method for adjudication of the controversy"); Perez v. Safety-Kleen Systems, Inc., 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because, *inter alia*, "some class members may fear reprisal"); Guzman v. VLM, Inc., 2008 WL 597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation").  This same consideration makes enhancement payments even more crucial in employment class action settlements. As one court has observed: "[Enhancement] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."  Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005). The incentive award proposed here justly compensates Plaintiff, who has risked reprisal form her formal employer, as well as potential future repercussions in her professional career, in order to come forward with her claims.

> **H.**    **The Requested Attorneys' Fees and Costs are Reasonable and Supported by Applicable Precedent**

In the motion for final approval, Plaintiff's Counsel will request an award of attorneys' fees in the amount of one-third of the Gross Settlement Amount ($250,000.00) and their out-of-pocket costs, currently estimated at $8,440.91. The requested fees and costs would cover all costs incurred to date by Plaintiff's Counsel, as well as the time Plaintiff's Counsel have spent in the course of this litigation, and will continue to spend in the coming months in order to obtain final approval of the Settlement and ensure that the settlement is fairly administered. Plaintiff's Counsel's ability to administer the class settlement without hiring a class action settlement

administrator will result in a substantial savings to the settlement fund, which can then be more properly used to pay distribution shares to Settlement Class Members.

The proposed notice of settlement will inform Settlement Class Members that one-third of the settlement proceeds would be used to pay for all attorneys' fees, and will provide the current amount of out-of-pocket costs incurred by Plaintiff's Counsel. This arrangement is appropriate since Plaintiff's Counsel accepted this case on a fully contingent arrangement with no upfront payment of fees or expenses by any client.  Further, the named Plaintiff signed a Retainer Agreement providing that counsel would receive one-third of the proceeds received in any judgment or settlement.  Courts generally favor awarding fees from a common fund based upon a percentage of the fund.  As the Supreme Court has explained:

> This Court has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorneys' fee from the fund as a whole . . . jurisdiction over the fund involved in the litigation allows the Court to prevent . . . inequity by assessing attorneys' fees against the entire fund thus spreading fees proportionally among those benefited by the suit.

Belling Company v. Van Gemert, 444 U.S. 472, 478 (1980).  Indeed, a one-third attorneys' fee award in a common fund case has been consistently approved as reasonable. See, e.g., Mansingh v. Exel Direct, Inc., C.A. No. 12-11661-DPW (D. Mass. May 7, 2014) (awarding one-third fee in settlement for $1 million); Scovil, 2014 WL 1057079, at *5 (finding one-third fee was reasonable because, among other things, "the plaintiffs' attorneys [Lichten & Liss-Riordan, P.C.] have undertaken all the administrative responsibilities of class action notice and distribution of the settlement proceeds"); Chalverus v. Pegasystems, Inc., Civ. A. No. 97-12570-WGY (D. Mass. 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery); In re Copley Pharm., Inc. Sec. Litig., Civ. A. No. 94-11897-WGY (D. Mass. 1996) (awarding one-

third of a $6.3 million settlement fund); In re Picturetel Corporation Sec. Litig., Civ. A. No. 97-12135-DPW (D. Mass. Nov. 4, 1999) (approving award of one-third of a $12 million settlement fund); Zeid v. Open Environment Corp., Civ. A. No. 96-12466-EFH (D. Mass. 1999) (awarding a fee of one-third of a $6 million settlement). Given this precedent, approving a one-third recovery for attorneys' fees and costs in this class action case, which includes all costs and expenses, is reasonable.

## **CONCLUSION**

For the reasons stated above, the Court should grant Plaintiff's Unopposed Motion for Preliminary Approval of the Settlement Agreement and enter an Order:

1) granting preliminary approval of the Settlement Agreement;

2) approving the Notice to the Settlement Class Members; and

3) approving the proposed schedule and procedure for the final approval of the Settlement Agreement.

DATED:      January 22, 2020         Respectfully submitted,

ARIELLE WALSH, on behalf of herself
and all others similarly situated,

By her attorneys,

*/s/ Olena Savytska*
Harold Lichten (*pro hac vice*)
Shannon Liss-Riordan (*pro hac vice*)
Olena Savytska (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
sliss@llrlaw.com
pdelano@llrlaw.com

John T. Longo, Esq.
CITADEL CONSUMER LITIGATION, P.C.
996 Smith Street
Providence, RI 02098
(401) 383-7550
jtlongo@citadelpc.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was filed electronically through the Court's CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Olena Savytska*
Olena Savytska