UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ARIELLE WALSH, on behalf of herself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No.<br>) 1:15-cv-00472-M-LDA |
| v. | ) |
| GILBERT ENTERPRISES, INC. d/b/a CLUB FANTASIES, | )<br>)<br>) |
| Defendant. | ) |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

**I.      INTRODUCTION**

Plaintiff Arielle Walsh, through her counsel, hereby submits her unopposed motion for final approval of the Settlement Agreement. Plaintiff filed this case in On November 6, 2015, against Club Fantasies and Francis DeLuca.[1] Plaintiff brough claims on behalf of herself and other similarly situated dancers, alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and the Rhode Island Payment of Wages Law, R.I. Gen. Laws § 28-14-1 *et seq,* by failing to pay the dancers minimum wage and requiring them to pay illegal fines, fees and tip-outs. Dkt. 1.

Plaintiff originally filed her Motion for Conditional Certification on May 9, 2016, and the Court held this motion in abeyance while discovery was completed. Dkts. 22, 31. On March 13, 2018, Plaintiff filed a renewed motion for conditional certification for her FLSA claims as well

---

[1] Defendant DeLuca was subsequently dismissed from the litigation. Dkt. 19.

as a motion for class certification of her Rule 23 claims under Rhode Island law, and after a hearing, the Court granted both motions. Dkts. 52, 53, 65. After FLSA notice issued, approximately 50 dancers opted into the case.

On November 12, 2019, the Parties participated in a full-day mediation with Mr. Stohler. Following several weeks of additional negotiations, aided by Mr. Stohler, the Parties came to a final agreement on December 11, 2019. Dkt. 79. The Court granted preliminary approval of the settlement on April 2, 2020. Dkt. 83. Shortly thereafter, counsel for Defendant reached out to Plaintiff's counsel to alert them of Club Fantasies' closure in light of the COVID-19 pandemic, and resulting issues with obtaining financing for the settlement. Declaration of Olena Savytska ("Savytska Decl."), attached hereto as Exhibit 1, ¶ 11. Over the next few months, the Parties worked with Mr. Stohler to devise a new payment plan and a revised timeline for dissemination of the settlement funds. Id. ¶ 12. The Parties submitted their proposal to the Court on July 22, 2020, and the Court approved the Amendment to the Parties' Settlement Agreement, reflecting the new payment schedule, on July 27, 2020. Dkt. 84.

Plaintiff's Counsel issued notice of the settlement to the Settlement Class Members on approximately August 4, 2020. Savytska Decl. ¶ 15. As of October 5, 2020, approximately 30% of the Settlement Class Members have submitted claim forms to take part in the settlement. Id. ¶ 18. Among these, the claimant with the largest share will receive, approximately $11,928.21; the average settlement award is estimated at $4,871.27. Id. ¶ 21. The Settlement Class Members in this case will receive a substantial portion of their actual damages.

As described herein, this settlement is a fair resolution of the Settlement Class Members' claims against Club Fantasies and Plaintiff requests that this Court approve the settlement pursuant to Fed. R. Civ. P. 23(e). As discussed in more detail below, despite considerable risks to

recovery, and the obstacles posed by the COVID-19 pandemic, after payment of attorneys' fees and service awards, Plaintiff's Counsel will distribute a total amount of $467,000.00 to Settlement Class Members pursuant to the schedule and formula described below. The proposed settlement is, therefore, fair and reasonable, and should receive final approval from the Court.

Plaintiff respectfully requests that the Court issue an Order: 1) granting final approval of the Settlement Agreement and Amendment; 2) approving the service award to Plaintiff Arielle Walsh; and 3) approving Plaintiff's request for attorneys' fees and costs. Defendant consents to the relief requested in this Motion.

## II.     PROCEDURAL HISTORY

Plaintiff Arielle Walsh filed this case in On November 6, 2015, Plaintiff Walsh filed a Class and Collective Action Complaint against Gilbert Enterprises, Inc. d/b/a Club Fantasies (hereinafter "Club Fantasies") and Francis DeLuca in the Federal Court for the District of Rhode Island, alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and the Rhode Island Payment of Wages Law, R.I. Gen. Laws § 28-14-1 *et seq,* by failing to pay Plaintiff Walsh and similarly situated exotic dancers minimum wage and requiring them to pay illegal fines, fees and tip-outs. Dkt. 1. On April 7, 2016, the Court granted Defendants' request to dismiss Plaintiff's claims against Francis DeLuca (Dkt. 19) and Defendant Club Fantasies filed its Answer and Affirmative Defenses on April 26, 2016. (Dkt. 20.)

On May 9, 2016, Plaintiff filed a Motion for Conditional Certification and Notice Pursuant to 29 U.S.C. § 216(b). (Dkt. 22.) The Court held Plaintiff's Motion for Conditional Certification in abeyance pending the completion of discovery and briefing on dispositive motions.  (Dkt. 31). After Plaintiff filed a Motion for Reconsideration, the Court granted

equitable tolling on would-be collective action members' claims and ordered that motions for class and conditional certification may be filed concurrently with any dispositive motions. (Dkt. 35). After discovery was completed, on March 13, 2018, Plaintiff filed a renewed motion for conditional certification for her FLSA claims as well as a motion for class certification of her Rule 23 claims under Rhode Island law. (Dkts. 52, 53). After a hearing, on March 14, 2019, the Court issued an order certifying a Rule 23 class of all dancers who worked at Club Fantasies since November 6, 2012 and an FLSA collective of all dancers who worked at Club Fantasies since October 3, 2013. FLSA notice issued on August 9, 2019. (See Dkt. 65).

Rule 23 class notice issued after Court approval on October 25, 2019, and the Court set a new summary judgment deadline for 30 days following the Parties' mediation, should the mediation prove unsuccessful. See Dkt. 78. On November 12, 2019, the Parties participated in a full-day mediation with Mr. Stohler, and came to a final agreement on December 11, 2019. (Dkt. 79).

The Court granted preliminary approval of the settlement on April 2, 2020. Dkt. 83. Shortly thereafter, counsel for Defendant alerted Plaintiff's Counsel of Club Fantasies' closure in light of the COVID-19 pandemic, and resulting issues with obtaining financing for the settlement. Savytska Decl. ¶ 11. Over the next few months, the Parties worked with Mr. Stohler to put together a payment plan and a revised timeline for dissemination of the settlement funds. Id. ¶ 12. The payment of funds under the Amendment is triggered by Club Fantasies reopening, which the parties have defined as Club Fantasies being allowed by state and local government authorities to open for business, and authorized to provide all services, including, but not limited to, food service, beverage service and entertainment services, indoors and outdoors at the Club location, in like kind to the services provided by Club Fantasies prior to the pandemic-related

closure. See Dkt. 84. The Parties agreed that Defendant shall pay $100,000 of the Gross Settlement Amount no later than 6 months after Club Fantasies being allowed to reopen; an additional $250,000 of the Gross Settlement Amount no later than 6 months after the first payment; and the final $400,000 of the Gross Settlement Amount no later than 6 months after the second payment is made. Dkt. 84. The Parties submitted their proposal to the Court on July 22, 2020, and the Court approved the Amendment to the Parties' Settlement Agreement, reflecting the new payment schedule, on July 27, 2020. Dkt. 84.

Plaintiff's Counsel issued notice of the settlement to the Settlement Class Members by mail and e-mail on approximately August 4, 2020. Savytska Decl. ¶ 15. Plaintiff's Counsel sent a reminder notice to dancers who had not yet submitted their claim forms on approximately September 7, 2020. Id. ¶ 16. In the last two weeks of September, Plaintiff's Counsel researched additional contact information for Settlement Class members via WestLaw, placed phone class to Settlement Class Members whose phone numbers could be located, and sent out an additional round of reminders on October 1, 2020. Id. ¶ 17. As a result of these efforts, by October 5, 2020, 97 dancers had submitted claims forms to participate in the settlement. Id. ¶ 18. Together, these dancers' claims represent approximately 30% of the Settlement Class. Id.

### III. ARGUMENT

#### A. The Class Received the Best Notice Practicable under the Circumstances

Constitutional due process and Federal Rule of Civil Procedure 23(c)(2)(B) require that absent class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Schulte v. Fifth Third Bank, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011). Notice should be "reasonably calculated to reach the absent class members." Reppert v. Marvin Lumber & Cedar

Co., 359 F.3d 53, 56 (1st Cir. 2004). "Rule 23 does not require the parties to exhaust every conceivable method of identifying the individual class members." In re Prudential Ins. Co. of Am. Sales Practices Litig., 177 F.R.D. 216, 232 (D.N.J. 1997) (citing Weinberger v. Kendrick, 698 F.2d 61, 71 (2d Cir.1982) (rejecting the contention that the mailing of individual notice to the last known address of all class members was inadequate), cert. denied, 464 U.S. 818 (1983)). Generally, all that is required is that the class be issued the "best notice practicable under the circumstances." In re Volkswagen & Audi Warranty Extension Litig., 273 F.R.D. 349, 355 (D. Mass. 2011). Indeed, it is well-settled that notice by first-class mail satisfies the notice requirement of Rule 23. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173–77 (1974); Zimmer Paper Products, Inc. v. Berger & Montague, P.C., 758 F.2d 86, 90 (3d Cir. 1985); Parks v. Portnoff Law Associates, 243 F. Supp. 2d 244, 249-50 (E.D. Pa. 2003) (notices mailed to class members' last known address held reasonable and adequate). As several courts have held, "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as Plaintiffs' Counsel acted reasonably in choosing the means likely to inform potential class members." Serio v. Wachovia Sec., LLC, 2009 WL 900167, at *8 (D.N.J. Mar. 31, 2009) (quoting In re Merrill Lynch TYCO Research Sec. Litig., 249 F.R.D. 124, 133 (S.D.N.Y.2008)).

Plaintiff's Counsel worked diligently to deliver notice to the Settlement Class Members. First, the dancers received notice by first-class mail[2] and, where available, email. Savytska Decl.

---

[2] Notice by first-class mail generally satisfies the notice requirements of both Fed. R. Civ. P. 23 and the due process clause. See Zimmer Paper Products, Inc. v. Berger & Montague, P.C., 758 F.2d 86, 90 (3d Cir. 1985) (citing Eisen, 417 U.S. at 173–77; Walsh v. Great Atlantic & Pacific Tea Co., 726 F.2d 956, 962–64 (3d Cir.1983); Cayuga Indian National v. Carey, 89 F.R.D. 627, 632–33 (N.D.N.Y.1981)); Parks v. Portnoff Law Associates, 243 F. Supp. 2d 244, 249-50 (E.D. Pa. 2003) (notices mailed to class members' last known address held reasonable and adequate). Moreover, when issuing notice by mail it is not necessary for every class member to receive

¶¶ 15-16. For any notices which came back as undeliverable, Plaintiff's Counsel researched updated addresses and promptly re-mailed the notices where possible. Id. ¶ 15.

Moreover, Plaintiff's Counsel sent reminders throughout the second month of the claims period. In the week of September 7, 2020, Plaintiffs' Counsel mailed and e-mailed a second round of notices to Settlement Class members who had not yet submitted claim forms. Id. ¶ 16. Plaintiffs' Counsel also researched additional email addresses and phone numbers, and made phone calls to any class members who had not yet claimed, for whom phone numbers could be located, encouraging them to submit their claim forms, and sent a round of reminder emails during the final week of the claim period. Id. ¶ 17. As a result, by October 5, 2020, there were 97 claimants, accounting for 30% of the Settlement Class. Id. ¶ 18.

Indeed, the high number of claims filed – nearly 100 – is further proof of the adequacy of the notice issued by Plaintiff's Counsel. See Schulte v. Fifth Third Bank, 805 F. Supp. 2d 560, 596-97 (N.D. Ill. 2011) (citing In re Agent Orange Product Liability Litigation MDL No. 381, 818 F.2d 145, 169 (2d Cir.1987) (fact that large number of claims were filed by class members "suggest[ed] that no practical problem exist[ed] as to the adequacy of the notice"). Given

---

actual notice, but only that the method of notice be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" In re Integra Realty Res., Inc., 354 F.3d 1246, 1260 (10th Cir. 2004) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). See also In re AT & T Mobility Wireless Data Servs. Sales Tax Litig., 789 F. Supp. 2d 935, 968 (N.D. Ill. 2011) ("Due process does not require that every class member receive notice."); Carlough v. Amchem. Prod., Inc., 158 F.R.D. 314, 325 (E.D. Pa. 1993) ("Receipt of actual notice by all class members is required by neither Rule 23 nor the Constitution."); In re Nat'l Life Ins. Co., 247 F.Supp.2d 486, 492 (D. Vt. 2002) ("An alleged failure to receive notice will not sustain a due process challenge as long as reasonable measures were taken to provide individualized notice to identifiable class members."). In Serio, for example, the court held that sending out notices via direct mail, where class members' notices that came back as undeliverable received follow-up notices if an updated address was found on a United States Postal Service database constituted "the best practicable method for providing notice." 2009 WL 900167, at *8.

Plaintiff's Counsel's substantial efforts to ensure notice of the settlement was actually received by as many Settlement Class Members as possible, and in light of the high rate of claims made and the absence of any opt-outs or objections, the dissemination of the notice in this case was more than adequate.

### B. The Proposed Settlement is Fair, Reasonable and Adequate and Should be Approved

It is well-established that "the law favors class action settlements." In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 88 (D. Mass. 2005) (citation omitted); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004) ("an overriding public interest in settling class action litigation, and it should therefore be encouraged"). Pursuant to Fed. R. Civ. P. 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The decision of whether to approve a proposed settlement is left to the discretion of this Court. In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 32 (1st Cir. 2009).

"The case law offers 'laundry lists of factors' pertaining to reasonableness, but 'the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'" Bezdek v. Vibram USA, Inc., 809 F.3d 78, 82 (1st Cir. 2015) (quoting Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund, 582 F.3d 30, 44 (1st Cir.2009)). Generally, "[i]f the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." Id. (quoting In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 32–33 (1st Cir.2009)). See also City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996)

("when sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement"); Rowland v. Cellucci, 191 F.R.D. 3, 6 (D. Mass. 2000) ("strong initial presumption" of fairness arises where the parties can show that "the settlement was reached after arms'-length negotiations, that the proponents' counsel have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small").

In determining the fairness of a settlement, courts in the First Circuit have relied on factors such as:

> (1) [the] risk, complexity, expense and duration of the case; (2) comparison of the proposed settlement with the likely result of continued litigation; (3) reaction of the class to the settlement; (4) stage of the litigation and the amount of discovery completed; and (5) quality of counsel and conduct during litigation and settlement negotiations.

In re Celexa & Lexapro Mktg. & Sales Practices Litig., 2014 WL 4446464, at *5 (D. Mass. Sept. 8, 2014) (quoting In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F.Supp.2d 259, 259–60 (D.N.H.2007)). Application of these factors to the instant case shows that the settlement reached by the Parties is fair and reasonable and merits final approval.

**1. The Settlement was the Result of Arms' Length Negotiation by Experienced Counsel**

The lengthy procedural history of this case supports a finding that the Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and damages to Settlement Class Members. This case, which has been pending since 2015, presented numerous and vigorously contested issues related to the classification of the Settlement Class Members and their compensation by Club Fantasies, as well as he existence of arbitration agreements signed by some of the Settlement Class Members.

9

See Savytska Decl. ¶ 20. The Parties engaged in a full-day mediation and extensive follow-up discussions with the assistance of respected mediator Charles Stohler. The Parties also conducted extensive formal discovery prior to engaging in mediation, including written discovery, and depositions of the Plaintiff, several opt-ins, and Defendant's employees and representatives. The Parties thoroughly briefed both conditional and class certification in this case. Furthermore, Plaintiff's Counsel reviewed and analyzed data provided by Club Fantasies and prepared extensive damages calculations in preparation for mediation and the settlement approval process.

The time and effort spent by the Parties in the course of this litigation, and the circumstances of the negotiations, are persuasive indicators that there was no collusion in either the negotiation process nor in the settlement achieved. Furthermore, the proposed Settlement Agreement between Plaintiff and Defendants demonstrates that the settlement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and damages. Such arm's length negotiations between capable and experienced counsel are entitled to a presumption of fairness, reasonableness, and adequacy. Rolland v. Cellucci, 191 F.R.D. 3, 6 (D. Mass 2000).

## 2. Comparison of the Proposed Settlement with the Likely Result of Continued Litigation Favors Final Approval.

"In evaluating the substantive fairness of a class action settlement, the court cannot, and should not, use as a benchmark the highest award that could be made to the plaintiff after full and successful litigation of the claim. Nor should the court consider cases of particular individual class members to determine whether each and every member of the class receives the fullest possible compensation." Duhaime v. John Hancock Mut. Life Ins. Co., 177 F.R.D. 54, 68 (D. Mass. 1997). See also In re Celexa & Lexapro Mktg. & Sales Practices Litig., 2014 WL 4446464, at *7 ("A

settlement need not reimburse 100% of the estimated damages to class members in order to be fair."); O'Brien v. Brain Research Labs, LLC, 2012 WL 3242365, at *15 (D.N.J. Aug. 9, 2012) ("When evaluating the fairness of settlements, courts have held that full compensation is not a prerequisite for a fair settlement."). Yet, Plaintiff's Counsel estimate that the settlement covers a significant portion of the class members' recoverable damages in this case. Given the 30% claim rate, the Claimants will receive close to their full single damages as part of this Settlement. Savytska Decl. ¶ 21. Importantly, despite the current closure of Club Fantasies due to the COVID-19 pandemic, the Amendment to the Settlement Agreement reached by the Parties reaffirms Club Fantasies' commitment to pay the full Gross Settlement Amount of $750,000.00. See Dkt. 84.

Even where the plaintiffs' claims are relatively strong, a settlement's fairness increases when the recovery of the class members will be substantial. "It must also be remembered that 'a dollar today is worth a great deal more than a dollar ten years from now.'" Schulte, 805 F. Supp. 2d at 583 (quoting Reynolds v. Beneficial Nat. Bank, 288 F.3d 277, 284 (7th Cir. 2002)). As discussed above, the average payment to claimants is currently $4,871.27, while the highest payment is $11,928.21. The fact that Settlement Class Members are receiving such substantial benefits weighs heavily in favor of granting settlement approval.

**3. There has been no Opposition to the Settlement**

The "reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (citing Sala v. National R.R. Passenger Corp., 721 F.Supp. 80, 83 (E.D.Pa.1989)). "In fact, the lack of objections may well evidence the fairness of the Settlement." Id. (citing In re PaineWebber Ltd. Partnerships Litig., 171 F.R.D. 126 (S.D.N.Y.); Schwartz v. Novo Indus. A/S, 119 F.R.D. 359, 363 (S.D.N.Y.1988)).

11

Close to 100 Settlement Class Members, representing 30% of the total Settlement Class in this case, have filed claims to date. Moreover, Plaintiff's Counsel have received no objections from the Settlement Class Members and no opt-outs. This factor strongly favors final approval. See In re Mexico Money Transfer Litig., 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that more than "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlement"); cf. The Authors Guild, et al. v. Google, Inc., 770 F.Supp.2d 666, 676 (S.D.N.Y.2011) (denying approval of Google's class action, in part because "an extremely high number of class members—some 6,800—opted out" and because "the objections [were] great in number"). A further update regarding any opposition will be provided at the final fairness hearing.

### 4. The Stage of Litigation and Completion of Discovery Strongly Favor Final Approval.

This factor is relevant because it determines "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee, 616 F.2d 305, 325 (7th Cir.1980). Discovery is sufficient if it allows a court to "intelligently make . . . an appraisal of the Settlement." In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (quotation marks omitted).

Here, the Parties have conducted extensive discovery on the merits of the case and on damages. In total, the Parties have conducted seven depositions, and the Parties exchanged written discovery. In preparation for the Parties' mediation, Club Fantasies provided detailed attendance records, which Plaintiff's Counsel used to arrive at a damages calculation. In doing so, Plaintiff's Counsel developed a clear picture of the overtime hours worked by Settlement Class Members and the damages owed to each. This is "sufficient" to determine the fairness and adequacy of settlement at this stage. In re M3 Power Razor, 270 F.R.D. 4563 (D. Mass. 2010)

12

(finding discovery sufficient where defendant produced 100,000 documents and pertinent financial information). See also Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 588 (3d Cir.1999) ("Post-discovery settlements are more likely to reflect the true value of the claim and be fair.").

Furthermore, the stage of the proceedings supports settlement approval. Plaintiff's Counsel have already briefed conditional and class certification in this case, which this Court granted. This briefing has provided the impetus for settlement discussions among the Parties and has helped Plaintiff achieve an extremely favorable settlement. Plaintiff's counsel have also prepared detailed damages estimates for each Class Member ahead of mediation. Plaintiff's Counsel is well aware of the damages recoverable in this action. Moreover, the procedural background of this matter supports a finding that the Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and damages to Settlement Class Members. Plaintiff's Counsel, and the Court, are thus able to fully evaluate the merits of the claims brought here.

### 5. The Proponents of the Settlement Are Highly Experienced in Similar Litigation.

Plaintiff is represented by highly experienced and competent counsel who have litigated numerous wage and hour cases aggressively and successfully. Lead counsel, Attorney Harold Lichten, has litigated, tried, and settled numerous class action wage-and-hour cases in Massachusetts and is a recognized expert in labor and employment law in Massachusetts.[3] See Elienberg v. RCN, No. 09-cv-10912 (D. Mass.); Meier v. MasTec North America, Inc., Hampden C.A. No. 13-448; and Scantland v. Jeffry Knight, Inc., No. 09–CV–1985 (M.D. Fla.). Furthermore, the attorneys of Lichten & Liss-Riordan, P.C. are pioneers in the field of worker misclassification

---

[3] Among other things, Mr. Lichten successfully argued the landmark case on the Massachusetts Independent Contractor Law, Somers v. Converged Access, Inc., 454 Mass. 582 (2009).

and has litigated and settled numerous class action matters filed in the federal courts.[4] Those settlements contained very similar terms to the proposed settlement in this case, including the same provision for attorneys' fees and the same basic method for notifying class members and distributing the settlement proceeds.

Plaintiff's Counsel are therefore well aware of the law in this area, and their experience has provided the plaintiff class with a high degree of expertise, which contributed to a favorable resolution of their claims. Plaintiff's Counsel are likewise experienced in the mechanics of class settlement administration. In the dozens of other cases the firm has settled as class actions, there have been thousands of class members overall requiring active engagement in processing claims from these settlements and distributing settlement proceeds. Plaintiff's Counsel's opinion that the proposed settlement is fair and reasonable under the circumstances should, therefore, be accorded considerable weight.

**C. The Proposed Service Award is Fair and Reasonable**

The Settlement Agreement provides for a service award of $20,000.00 to Plaintiff Arielle Walsh. Settlement Agreement ¶ 24(a). This service award is fair and reasonable and should be approved by the Court, given that Plaintiff Walsh initiated the lawsuit, and it was through her

---

[4] The class cases they have litigated and settled in federal court include: Brandon v. 3PD, Inc., C.A. No. 13-03745 (N.D. Ill. Jan. 16, 2016) (Doc.#151); Anderson v. HomeDeliveryAmerica.com, et al., C.A. No. 11-cv-10313 (D. Mass. Dec. 17, 2014) (Dkt. 108); Mansingh v. Exel Direct, Inc., C.A. No. 12-11661 (D. Mass. May 7, 2014); Kiely v. TripAdvisor, LLC, C.A. No. 08-11284 (D. Mass. Aug. 8, 2011) (Doc. #52); Apana et al. v. Fairmont Hotels, Inc., C.A. No. 08-cv-00528 (D. Hawaii 2011); Carreiro, et al. v. Huntleigh Corp., et al., C.A. No. 08-10819 (D. Mass.); Elienberg v. RCN, C.A. No. 09-10912 (D. Mass.); Maliniski et al. v. Starwood Hotels, C.A. No. 08-11859 (D. Mass.); Monahan et al. v. WHM LLC d/b/a LXR Luxury Resorts and Boca Resorts, Inc. d/b/a Boca Raton Resort & Club, C.A. No. 09-CV-80198 (S.D. Fla.); Hayes et al. v. Aramark Sports Service LLC, C.A. No. 08-10700 (D. Mass.); Niles et al. v. Ruth's Chris Steak House, C.A. No. 08-07700 (S.D.N.Y.); Mitchell et al. v. PrimeFlight Aviation Services, C.A. No. 08-cv-10629 (D. Mass.); Barreda et al. v. Prospect Airport Svcs., C.A. No. 08-323 (N.D. Ill.); Miller et al. v. SBLI, C.A. No. 08-10267 (D. Mass.).

initiative that this recovery was obtained. Ms. Walsh has provided invaluable assistance to Plaintiff's Counsel over the course of the past five years, including providing documents, responding to discovery, preparing affidavits, testifying at a full-day deposition, and aiding with the damages model and mediation negotiations. See Savytska Decl. ¶ 22.

Courts have widely recognized that incentive payments serve an important function in promoting enforcement of state and federal law by private individuals, while also encouraging class action settlements. See In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005); In re Compact Disc Minimum Advertised Price Antitrust Litig., 292 F. Supp. 2d 184, 189 (D. Me. 2003); see also Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002 WL 2003206, at *5-6 (E.D.N.Y. 2002) (collecting cases approving incentive payments). As Judge Hornby recognized, awards in employment cases were generally higher than in other types of cases and recent awards averaged around $15,000, but could reach $30,000 and higher. Scovil v. FedEx Ground Package Sys., Inc., 2014 WL 1057079m at *6 (D. Me. Mar. 14, 2014) (citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. Rev. 1303, 1308 (2006); Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir.1998) ($25,000 incentive award approved for one named plaintiff; total settlement was for $14 million plus structural changes to the pension fund)); see also Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, *8 (E.D.N.Y. Nov. 20, 2012) (approving service awards of $5,000 each to two plaintiffs, noting that "[s]uch service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs"); Toure v. Amerigroup Corp., 2012 WL 3240461, at * 5 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 and $5,000); Simmons v. Enterprise Holdings, Inc.*,* 2012 WL 2885919, *2

(E.D. Mo. July 13, 2012) (approving "payment of individual incentive awards to the named Plaintiffs in the amount of $6,000.00 as set forth in the Settlement Agreement for their services as class representatives and as consideration for providing a general release"); Sewell v. Bovis Lend Lease, Inc., 2012 WL 1320124, at * 14–15 (S.D.N.Y. Apr. 16, 2012) (finding reasonable and approving service awards of $15,000 and $10,000 in wage and hour action); Reyes v. Altamarea Group, LLC, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 to three class representatives and $5,000 to fourth class representative in restaurant case challenging tip and minimum wage policies); Willix v. Healthfirst, Inc., 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500); Torres v. Gristede's Operating Corp., 2010 WL 5507892, at *8 (S.D.N.Y. Dec. 21, 2010) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); Khait v. Whirlpool Corp., 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving service awards of $15,000 and $10,000, respectively, in wage and hour class action); In re Janney Montgomery Scott LLC Fin. Consultant Litig., 2009 WL 2137224, *12 (E.D. Pa. July 16, 2009) (approving $20,000 payments to three named plaintiffs in complex FLSA action)).[5]

---

[5] One of the reasons for finding higher incentive payment in employment cases, including wage and hour cases, is the issue of retaliation. See, e.g., Overka v. Am. Airlines, Inc., 265 F.R.D. 14, 24 (D. Mass. 2010) (in certifying national class of skycaps challenging $2 per bag curbside check-in charges, court noted with approval skycaps' argument that "class adjudication is superior in the employment context because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis" and held that class action "is a superior method for adjudication of the controversy"); Perez v. Safety-Kleen Systems, Inc., 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because, *inter alia*, "some class members may fear reprisal"); Guzman v. VLM, Inc., 2008 WL 597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation"). This same consideration makes enhancement payments even more crucial in employment class action settlements. As one court has observed: "[Enhancement] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the

Here, Plaintiff Walsh has been instrumental in litigating this class and collective action. Since 2015, she has worked extensively with Plaintiff's Counsel to provide responses to interrogatories and requests for production of documents; provide information for her affidavits in support of conditional and class certification; and assist Plaintiff's Counsel in developing the damages model in this case. Furthermore, Plaintiff Walsh prepared for and sat for a full-day deposition conducted by Defendant's counsel, and maintained contact with Plaintiffs' counsel prior to and after the mediation session, as well as during the follow-up discussions which took place leading up to the signing of the Settlement Addendum. See Savytska Decl. ¶ 23. Ms. Walsh's ongoing contributions to this case were invaluable and no objections have been made to the proposed payment.

### D. Plaintiff's Request for Fees and Costs is Reasonable

The Settlement Agreement further provides for the payment of Plaintiff's attorneys' fees in the amount of $250,000.00 (33% of the Gross Settlement Amount), and Plaintiff's Counsel's out-of-pocket costs. Settlement Agreement ¶¶ 13(n), (p), 24(b). Plaintiff's Counsel have collectively spent more than 400 hours advocating on behalf of Plaintiff and the Settlement Collective, for a combined lodestar of $146,410.00. Savytska Decl. ¶ 23. Plaintiff's Counsel are likely ot spend dozens more hours in administering the settlement payments and responding to inquiries from Settlement Class Members over the coming two years. The requested award of $250,000.00 is therefore reasonable and should be approved. Plaintiff's Counsel are also entitled to recover their out-of-pocket costs, including costs associated with the administration of the settlement in the months to come.

---

risk of adverse actions by the employer or co-workers." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

Counsel's contingency fee agreement provides for recovery of fees equal to 33% of the gross recovery, so Plaintiff's Counsel's request is in line with their fee agreement. In fact, fee requests similar to the one made by Plaintiff here have routinely been approved by courts, particularly in employment cases. See In re Relafen, 231 F.R.D. at 82 (approving attorneys' fees of 33 and 1/3%); Scovil v. FedEx Ground Package System, Inc., 1:10-CV-515-DBH, 2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014) ("contingent fees of one-third are common" and "consistent with wage-and-hour settlements in the neighboring jurisdiction of Massachusetts"). The amount Plaintiffs' counsel will receive is a reasonable multiplier of thier fees when calculated under a lodestar method. Their lodestar amount, based on 404.5 hours of attorney time would be $146,410.00, which represents a 1.7 multiplier of the fee award requested under the Settlement Agreement.[6] See Savytska Decl. ¶ 23. Moreover, the lodestar does not account for the work remaining to be performed in the course of the settlement process over the coming months. Given Plaintiff's Counsel's substantial experience in wage and hour litigation,[7] and the result achieved for the Plaintiff and Settlement Class Members, this fee request is reasonable.

---

[6] See, e.g., In re Tyco, 535 F. Supp. 2d at 271 ("taking the lodestar amount as an accurate indication of the work that was reasonably required to produce the settlement, the resulting lodestar multiplier of 2.697 appropriately compensates counsel for the risk that they assumed in litigating the case."); In re Relafen, 231 F.R.D. at 82 ("A multiplier of 2.02 is appropriate.").

[7] Attorney Harold Lichten, one of the lead counsel for Plaintiff, has been lead or co-counsel in numerous wage and hour cases in the United States, and has successfully argued cases arising under state and federal wage laws before the Seventh, Third, Eleventh, and First Circuit Courts of Appeal and the Supreme Courts of New Jersey and Massachusetts. See, e.g., Costello v. BeavEx, Inc., 810 F.3d 1045 (7th Cir. 2016) (affirming denial of defendant's motion for summary judgment and vacating District Court's denial of class certification in wage and hour action); Scantland v. Jeffry Knight, Inc., 721 F.3d 1308 (11th Cir.2013) (reversing grant of summary judgment to Defendants in FLSA action); Hargrove v. Sleepy's, LLC, 220 N.J. 289, 106 A.3d 449 (2015); Schwann v. FedEx Ground Package Sys., Inc., 813 F.3d 429 (1st Cir. 2016); Chambers v. RDI Logistics, Inc., 65 N.E.3d 1 (Mass. 2016); Somers v. Converged Access, Inc., 911 N.E.2d 739 (Mass. 2009).

Plaintiff's Counsel are also entitled to an award of their out-of-pocket costs. In addition to its provision for reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. See 29 U.S.C. § 216(b). Thus, awards of reasonable out-of-pocket costs incurred by Plaintiff's Counsel are routinely approved by courts as part of FLSA settlements. See, e.g., Lauture v. A.C. Moore Arts & Crafts, Inc., 17-CV-10219-JGD, 2017 WL 6460244, at *3 (D. Mass. June 8, 2017) (approving Plaintiffs' request for costs as part of FLSA settlement, including costs of settlement administration); Marrotta v. Suffolk County, 726 F. Supp. 2d 1, 4 (D. Mass. 2010) (awarding attorneys' fees and costs to plaintiffs as part of FLSA settlement). Plaintiff's Counsel have, to date, incurred costs in the amount of $12,028.92. See Savytska Decl. ¶ 24. They seek an award of costs not to exceed $13,000.00, to account for the added costs of settlement administration over two years. See Savytska Decl. ¶ 25. Plaintiff's request for costs is therefore reasonable and should be approved.

## IV.     CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court issue an Order:

1) granting final approval of the Settlement Agreement and Amendment;

2) approving the service award to Plaintiff Arielle Walsh;

and 3) approving Plaintiff's request for attorneys' fees and costs.

DATED:	October 8, 2020	Respectfully submitted,

ARIELLE WALSH, on behalf of herself
and all others similarly situated,

By her attorneys,

*/s/ Olena Savytska*

Harold Lichten (*pro hac vice*)
Shannon Liss-Riordan (*pro hac vice*)
Olena Savytska (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
sliss@llrlaw.com
osavytska@llrlaw.com

John T. Longo, Esq.
CITADEL CONSUMER LITIGATION, P.C.
996 Smith Street
Providence, RI 02098
(401) 383-7550
jtlongo@citadelpc.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing motion was filed electronically through the Court's CM/ECF system, which will send notice of this filing to all counsel of record.

/s/ Olena Savytska
Olena Savytska